<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                 :
JASON MARINARI,                  :
                                 :        Civil Action No.
            Plaintiff,           :        11-7172 (NLH)
                                 :
       v.                        :
                                 :
TRUMP PLAZA HOTEL & CASINO,      :
SECURITY SECOND SHIFT,           :
                                 :
            Defendant.           :
_____:

_____
                                 :
JASON MARINARI,                  :
                                 :        Civil Action No.
            Plaintiff,           :        12-0132 (NLH)
                                 :
       v.                        :
                                 :
ATLANTIC CARE HOSPITAL et al.,   :        **O P I N I O N**
                                 :        <u>**APPLIES TO BOTH ACTIONS**</u>
            Defendants.          :
_____:

**Hillman**, United States District Judge:

       Plaintiff Jason Marinari ("Plaintiff") currently confined at
the Atlantic County Justice Facility, Mays Landing, New Jersey,
seeks to bring these two 42 U.S.C. § 1983 actions <u>in forma</u>
<u>pauperis</u>, without prepayment of fees, pursuant to 28 U.S.C. §
1915.

**I.     BACKGROUND**

       **A.     Civil Action No. 11-7172**

       Plaintiff's complaint in Civil Action No. 11-7172 names as a

Defendant the "Security Second Shift", presumably a collective description of the security guards who worked at the Trump Plaza Hotel and Casino ("Hotel and Casino") on September 23, 2011, from 4 p.m. to 12 a.m.  See Civil Action No. 11-7172, Docket Entry No. 1, at 1.  The complaint alleges that on that date, Plaintiff was at the Hotel and Casino when he was detained at approximately 6:00 p.m. by the Hotel and Casino's security guards for reasons not specified in the complaint.  See id. at 4.  Plaintiff also asserts that his detention lasted for about an hour during which Plaintiff was handcuffed, taken to the basement of the Hotel and Casino, kept in an elevator cabin,[1] and "tazered" and "mocked . . . for [Plaintiff's] belief in Islam."  Id.  Plaintiff alleges that the security guards eventually took Plaintiff to the Atlantic Care Medical Center, but Plaintiff fails to specify the reasons for this transfer.  These events occurred without any involvement by local law enforcement officials, such as the Atlantic City Police Department, who, it appears, were unaware of the alleged incident.  See id. at 4-5.  In Civil Action No. 11-7172, Plaintiff seeks unspecified relief, merely stating that he wishes "the court to pursue" the security guards.  Id. at 5.  The Court construes Plaintiff's request for relief as his application for damages and, in addition, as a request for criminal

---

1.  According to Plaintiff, this elevator cabin remained at the basement floor during the entire hour-long detention.  Id.

prosecution of the guards.

    **B.   Civil Action No. 12-0132**

    Plaintiff's complaint in Civil Action No. 12-0132 describes additional incidents that allegedly occurred on September 23, 2011.  In this second action, Plaintiff names as Defendants Atlantic Care Hospital and the same Hotel and Casino security guards.  <u>See</u> Civil Action No. 12-0132, Docket Entry No. 1. Plaintiff alleges that his rights were violated because the "Atlantic Care ambulance driver breached procedure by letting the security guards ... get in the ambulance with [Plaintiff] ... [where the security guards] ta[z]er[ed Plaintiff]," again. Apparently, upon his release from Atlantic Care Hospital, Plaintiff "went to Shore Memorial Hospital and ended up with bill of $18,322."  <u>Id.</u> at 4.  Plaintiff contends in this action that he "was not taken care of properly by [either Atlantic Care Hospital or Shore Memorial Hospital] and did not receive proper medical attention."  <u>Id.</u>

**II.  <u>STANDARD OF REVIEW</u>**

    In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  Indeed, it is well established that a court should "accept as true all of the

[factual] allegations in the complaint and reasonable inferences
that can be drawn therefrom, and view them in the light most
favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>,
132 F.3d 902, 906 (3d Cir. 1997).  However, while a court will
accept well-pled allegations as true, it will not accept bald
assertions, unsupported conclusions, unwarranted inferences, or
sweeping legal conclusions cast in the form of factual
allegations.  <u>See</u> <u>id.</u>

    Addressing the pleading standard stated by the United States
Supreme Court in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007),
the Court of Appeals for the Third Circuit provided the courts in
this Circuit with detailed and careful guidance as to what kind
of allegations qualify as sufficient under the Rule 8 pleading
standard.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224,
230-34 (3d Cir. 2008).  Specifically, the Court of Appeals
observed as follows:

> "While a complaint . . . does not need detailed
> factual allegations, a plaintiff's obligation [is] to
> provide the 'grounds' of his 'entitle[ment] to relief'
> [by stating] more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of
> action . . . ." <u>Twombly</u>, 127 S. Ct. at 1964-65 . . .
> Rule 8 "requires a 'showing,' rather than a blanket
> assertion, of entitlement to relief." <u>Id.</u> at 1965
> n.3. . . . "[T]he threshold requirement of Rule
> 8(a)(2) [is] that the 'plain statement [must] possess
> enough heft to 'sho[w] that the pleader is entitled to
> relief.'" <u>Id.</u> at 1966.  [Hence] "factual allegations
> must be enough to raise a right to relief above the
> speculative level." <u>Id.</u> at 1965 & n.3. . . . [Indeed,
> it is not] sufficient to allege mere elements of a
> cause of action; instead "a complaint must allege

facts suggestive of the proscribed conduct."  Id. Phillips, 515 F.3d at 230-34 (original brackets removed).

This pleading standard was further refined by the United States Supreme Court in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Court observed:

> [In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  Id. at 557. . . . A claim has facial plausibility [only] when the plaintiff pleads factual content . . . .  Id. at 556. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted). [A fortiori,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [,i.e., by] legal conclusion[s] couched as a factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [these] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn . . . the discovery process.  Twombly, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint alleges any of the elements] "generally," [i.e., as] a conclusory allegation

> [since] Rule 8 does not [allow] pleading the bare
> elements of [the] cause of action [and] affix[ing] the
> label "general allegation" [in hope to develop facts
> through discovery].

<u>Iqbal</u>, 129 S. Ct. at 1949-54.

## III. DISCUSSION

### A.   **Section 1983 Application for Damages**

#### 1.   **Color of Law Requirement**

To recover against a defendant under 42 U.S.C. § 1983,[2] a plaintiff must establish that the defendant acted under "color of [state] law" to deprive him of a right secured by federal laws or the Constitution.  See <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights; rather, it provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights.  See <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996); <u>Groman</u>, 47 F.3d at 633.

Whether a defendant acted under "[t]he color of state law . . . is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." <u>Id.</u> at 638.  The

---

2.  Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, or any State .
> . . subjects, or causes to be subjected, any citizen of
> the United States . . . to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress.

color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). For the conduct to be "fairly attributable" to the State: (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the State, or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible; and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State. See id. at 936-39.

The United States Supreme Court has articulated several instances where a private party's actions may be fairly attributed to state action, explaining that such attribution accrues if: (1) a private defendant's wrongful activity results from the State's coercive power; (2) the State provides significant encouragement to a private defendant's wrongful activity; (3) a private defendant engages in a wrongful conduct while acting jointly with the State or its agents; (4) a nominally private defendant is effectively controlled by the State during the defendant's wrongful activity; (5) a private defendant has been delegated a public function by the State and

used that delegation to engage in the wrongful activity; or (6)
the government manages or controls a private defendant in
connection with the defendant's wrongful activity.  See Brentwood
Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296
(2001).

### 2.   Security Guards As State Actors

A security guard could, potentially, qualify as a state
actor if he or she uses state-conferred law-enforcement
credentials, such as a police badge, or acts in close cooperation
with police officials.  See, e.g., Lusby v. T.G. & Y. Stores, 749
F.2d 1423 (10th Cir. 1984) (an off-duty police officer employed
as security guard acted under color of state law where the
officer flashed police badge at a shoplifting suspect, used
police documents to get information to complete the arrest forms,
and secured attendance of uniformed officers to pick up and
detain the suspect without any inquiry as to validity of the
arrest), vacated on other grounds, 474 U.S. 805 (1985); see also
Murray v. Wal-Mart, Inc. 874 F.2d 555 (8th Cir. 1989) (security
guard acted under color of state law where a shoplifter was
arrested under the store's practice to work with the local police
department in prosecuting shoplifters, and the store's security
guard, who was also an employee of the police department and
worked closely with the prosecuting attorney, summoned police
after searching the shoplifter's purse and police responded

analogously as they would in response to an internal police call); Traver v. Meshriy, 627 F.2d 934 (9th Cir. 1980) (action of an off-duty police officer, who was working as a bank's security guard, constituted action under color of state law because the officer was placed in bank as part of a police department program and, hence, the officer retained primary duty to police department and not to the bank); Padover v Gimbel Bros., Inc., 412 F. Supp. 920 (E.D. Pa. 1976) (a private security guard acted under color of state law where the guard acted jointly with a township's police officer).

In contrast, where state or municipal police power is not involved, the actions of a security guard are not attributed to the State. See Wade v. Byles, 83 F.3d 902 (7th Cir.), cert. denied, 519 U.S. 935 (1976) (a private citizen employed as a security guard to provide security in lobby of building owned by Chicago Housing Authority was not state actor because private citizen's function as lobby security guard was not traditionally exclusive prerogative of state); Robinson v. Davis, 447 F.2d 753 (4th Cir. 1971), cert. denied, 405 U.S. 979 (1972) (college security guards did not act under color of state law even though they were also local police officers; this was so because the guards acted in their capacity as college security personnel); Watkins v. Oaklawn Jockey Club, 183 F.2d 440 (8th Cir. 1950) (sheriff employed as guard by a jockey club did not act under

color of state law while enforcing the club's rules against a
visitor); <u>Josey v. Filene's, Inc.,</u> 187 F. Supp. 2d 9 (D. Conn.
2002) (two plaintiffs detained at a clothing store failed to meet
the color-of-law requirement where they alleged that private
security guards employed by the store made decision to apprehend
and detain them, because the security guards were not state
employees, even if they detained the plaintiffs in the presence
of a municipal officer); <u>Allen v. Columbia Mall, Inc.,</u> 47 F.
Supp. 2d 605(D. Md. 1999) (even where shopping mall's lead
security officer had police powers pursuant to state statute,
consisting of authority to write parking tickets at mall and to
arrest people suspected of committing crimes within mall common
areas and parking lot, such power did not mean that private
security guards subordinate to that lead officer acted under
color of state law in performance of their duties); <u>Anderson v.
Randall Park Mall Corp.,</u> 571 F. Supp. 1173 (N.D. Ohio 1983)
(private security guards employed by shopping mall did not act
under color of state law when they handcuffed and detained
plaintiff for causing commotion in mall and refusing to leave
when asked); <u>Granet v. Wallich Lumber</u>, 563 F. Supp. 479 (E.D.
Mich. 1983) (a private security guard does not act under color of
state law in detaining a person and then coercing that person
into accompanying the guard to police station, since there was no
allegation of conspiracy or other special arrangement between

police officials and the guard); Weyandt v. Mason's Stores, Inc.,
279 F. Supp. 283 (W.D. Pa. 1968) (a security and detective agency
did not act under color of state law, even where it called police
to the store that employed that agency, since police officers did
not aid the store and the agency in effectuating the store's
policy).

    Here, Plaintiff states, in no ambiguous terms, that he was
detained by security guards employed by the Hotel and Casino, and
he expressly acknowledges that neither local police, nor any
other state law enforcement officials, were involved in any
aspect of his detention or were even informed about the alleged
events.  Therefore, Plaintiff's claims against the Hotel and
Casino security guards are subject to dismissal for failure to
meet the color-of-law requirement.[3]

### 3. Driver and Hospitals Are Not State Actors

    Similarly, under the facts alleged the ambulance driver and
hospitals that provided Plaintiff with medical care do not
qualify as state actors.  See Place v. Shepherd, 446 F.2d 1239
(6th Cir. 1971) (financial aid in form of public funds to

---

3. Regulation by the State of New Jersey and authorization of
casino activities by the Casino Control Commission do not suffice
to transform casinos into state actors.  See Doug Grant, Inc. v,
Greate Bay Casino Corp. 3 F. Supp. 2d 518 (N.J.D. 1998), aff'd in
part and mod. in part on other grounds, 232 F.3d 173 (3d Cir.
2000), cert. denied, 532 U.S. 1038 (2001).  Analogously,
regardless of applicable state licenses, hotels are not state
actors.  See Van Hull v. Marriott Courtyard, 87 F. Supp. 2d 771
(N.D. Ohio 2000).

hospitals does not convert private hospitals' actions into
actions under color of law); Croy v. A.O. Fox Mem'l Hosp., 68 F.
Supp. 2d 136 (N.D.N.Y. 1976) (the mere fact that the state
regulates facilities and standards of care of private hospitals
does not per se make acts of hospital acts of the state under §
1983, since such a blanket rule would overlook essential point
that state action, not private action, must be subject of
complain); Spencer v. Community Hospital of Evanston, 393 F.
Supp. 1072 (N.D. Ill. 1975) (fact that hospital receives public
funding or operates specified medical programs for state does
not, of itself, satisfy the requirement that state's involvement
with challenged action of hospital must be of such nature that
action of hospital can fairly be considered action of state);
accord McKinney v. West End Voluntary Ambulance Ass'n, 821 F.
Supp. 1013 (E.D. Pa.) (1992) (private, nonprofit ambulance
association was not state actor and therefore was not subject to
suit under § 1983, since plaintiff failed to demonstrate that
function served by private entity is traditionally exclusive
prerogative of the state, that the state was so interdependent
with the entity that it must be recognized as a joint
participant, or that the state has encouraged or coerced
challenged behavior, since, absent such a showing, the ambulance
association was not acting under color of state law).

Here, in no ambiguous terms, Plaintiff states that he was

taken into the ambulance and then hospitalized as a private individual obtaining private care, and he was billed accordingly. Therefore, his claims against the ambulance driver and hospitals are subject to dismissal.

####     4.   Leave to Amend

Ordinarily, the plaintiff may be granted "leave [to amend,] . . . when justice so requires." See Foman v. Davis, 371 U.S. 178, 182 (1962); accord Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993).  Indeed, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep . . . may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  Foman, 371 U.S. at 182-83.  However, "[a]llowing leave to amend where there is a stark absence of any suggestion by the plaintiffs [may] cure the defects in the pleadings . . . would frustrate Congress's objective in enacting this statute of provid[ing] a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis." Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 164 (3d Cir. 2004) (internal quotation marks and citation omitted).

Here, Plaintiff's claims against Defendants in both actions unambiguously indicate that Defendants did not act under color of state law.  Therefore, granting Plaintiff leave to amend his challenges in either of these two matters would necessarily be

futile: the shortcomings of Plaintiff's allegations ensue from the nature of his claims and cannot be cured by re-pleading.

Therefore, all of Plaintiff's Section 1983 claims in both actions will be dismissed with prejudice.

**B.**   **Application for Commencement of Criminal Proceeding**

Finally, the Court takes notice of the language in Plaintiff's Complaint in Civil Action No. 11-7172 suggesting his interest in having a criminal proceeding instituted against the guards.  So construed, Plaintiff's application is facially invalid.

A private plaintiff cannot force a criminal prosecution because the "authority to initiate a criminal complaint rests exclusively with state and federal prosecutors."  See Collyer v. Darling, 98 F.3d 211, 222 (6th Cir. 1996); Mercer v. Lexington Fayette Urban County Gov't., 52 F.3d 325 (6th Cir. 1995); Forney v. Woodridge Hosp. & Johnson City Med. Ctr., 2005 U.S. Dist. LEXIS 37257, at *6 (E.D. Tenn. Sept. 14, 2005); see also United States ex rel. Savage v. Arnold, 403 F. Supp. 172 (E.D. Pa. 1975) (stating that a private party cannot, on his own, commence a criminal proceeding for failure to meet to comply with the requirements of Rules 3 and 4 of the Rules of Criminal Procedure and citing United States v. Blierley, 331 F. Supp. 1182 (W.D. Pa. 1971)); Brown v. Duggan, 329 F. Supp. 207 (W.D. Pa. 1971); United States ex rel. Spader v. Wilentz, 25 F.R.D. 492 (D.N.J), aff'd,

280 F.2d 422 (3d Cir.), <u>cert.</u> <u>denied</u> 364 U.S. 875 (1960)).

Not only is Plaintiff, as a private citizen, without authority to prosecute criminal charges, <u>see</u> <u>United States v. Jarvis</u>, 560 F.2d 494, 497 (2d Cir. 1977); <u>Pokalsky v. SEPTA</u>, 2002 U.S. Dist. LEXIS 16175 (E.D. Pa. Aug. 28, 2002); <u>In re Guyer</u>, 1996 U.S. Dist. LEXIS 17807, at *1 (E.D. Pa. 1996); <u>United States v. Leomporra</u>, 1995 U.S. Dist. LEXIS 15007, at *1 (E.D. Pa. 1995); <u>Figueroa v. Clark</u>, 810 F. Supp. 613, 615 (E.D. Pa. 1992); <u>Bryant v. City of Phila.</u>, 1990 U.S. Dist. LEXIS 7132, at *6 n.1 (E.D. Pa. 1990); <u>Comer v. Philadelphia County</u>, 1987 U.S. Dist. LEXIS 1775, at *4 (E.D. Pa. 1987); <u>United States ex rel. Savage v. Arnold</u>, 403 F. Supp. 172, 174 (E.D. Pa. 1975); <u>United States v. Panza</u>, 381 F. Supp. 1133, 1134 (W.D. Pa. 1974), but – in addition – this Court similarly is without authority to do so on Plaintiff's behalf, since

> [i]t is well established that private citizens can neither bring a direct criminal action against another person *nor can they petition the federal courts to compel the criminal prosecution of another person*. <u>See</u> <u>Maine v. Taylor</u>, 477 U.S. 131, 137 (1986); <u>Heckler v. Chaney</u>, 470 U.S. 821, 832 (1985); <u>Leeke v. Timmerman</u>, 454 U.S. 83, 86-87 (1981); <u>United States v. General Dynamics Corp.</u>, 828 F.2d 1356, 1366 (9th Cir. 1987). Accordingly, the district court [is obligated to] refus[e] fil[ing] criminal charges or . . . compel[ing] prosecution based on those charges.

<u>Ellen v. Stamm</u>, 1991 U.S. App. LEXIS 30558 (9th Cir. Dec. 19, 1991) (emphasis supplied), <u>cert.</u> <u>denied</u>, <u>Montalvo v. Stamm</u>, 506 U.S. 1047 (1993).

**IV.   CONCLUSION**

Plaintiff's application to proceed in these two matters <u>in forma pauperis</u> will be granted, and the Clerk will be directed to file both complaints.[4]  Both complaints will be dismissed, and such dismissal will be with prejudice.  Furthermore, the Clerk of Court will be directed to reinstate Plaintiff's application for appointment of <u>pro bono</u> counsel, submitted in Civil Action No. 12-0132, which will be denied as moot in light of the dismissal of Plaintiff's complaint in that action.

An appropriate Order accompanies this Opinion.



        /s/ Noel L. Hillman
**NOEL L. HILLMAN,**
**United States District Judge**


Dated:  June 8, 2012
At Camden, New Jersey

---

[4] The Court expressly notified Plaintiff that the filing fee to be assessed in connection with each action is $350, and Plaintiff expressly notified the Court that he wished to proceed with both actions.  <u>See</u> Civil Action No. 11-7172, Docket Entries Nos. 2 and 3.